UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS HENDON,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>BAROYA, et al.,<br><br>　　　　Defendants. | Case No. 1:05 cv 01247 AWI GSA PC<br><br>ORDER ADOPTING IN PART THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS<br><br>ORDER GRANTING IN PART AND DENYING IN PARTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 125) |

　　　　Plaintiff is a state prisoner proceeding pro se in this civil rights action pursuant to 42 U.S.C. § 1983.  This proceeding was referred to the Magistrate Judge pursuant to Local Rule 302 and 28 U.S.C. § 636(b)(1).

　　　　On June 26, 2013, the Magistrate issued Findings and Recommendations that recommended Defendants' motion for summary judgment be granted.  On December 2, 2013, Plaintiff filed objections to the Findings and Recommendations.   Defendants filed a reply on December 11, 2013.

　　　　In accordance with the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 305, this Court has conducted a de novo review of this case.  Having carefully reviewed the entire file, the Court respectfully finds that it cannot adopt portions of the Findings and Recommendations for the reasons set forth below.

　　　　Because the parties are aware of this case's procedural history, legal authority, and the submitted facts, the Court will not restate them here unless needed to explain this Court's order.

1

**DISCUSSION**

As explained by the Magistrate Judge, the Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. Morgan, 465 F.3d at 1045 (citing Rhodes, 452 U.S. at 347) (quotation marks omitted). Thus, conditions devoid of any legitimate penological purpose or contrary to evolving standards of decency that mark the progress of a maturing society violate the Eighth Amendment. Morgan, 465 F.3d at 1045; see also Hope v. Pelzer, 536 U.S. 730, 737, (2002); Rhodes, 452 U.S. at 346. Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, Morgan, 465 F.3d at 1045 (quotation marks omitted).

To avoid summary judgment on Plaintiff's Eighth Amendment claim, Plaintiff must provide evidence to show a genuinely disputed issue of material fact as to whether prison officials were deliberately indifferent to a substantial risk of harm to his health or safety. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). Extreme deprivations are required to make out a conditions of confinement claim, and only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Hudson v. McMillian, 503 U.S. 1, 9 (1992) (citations and quotations omitted). In other words, to state an Eighth Amendment claim, Plaintiff must provide evidence sufficient to show that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff. E.g., Farmer, 511 U.S. at 847; Thomas v. Ponder, 611 F.3d at 1150-51; Foster v. Runnels, 554 F.3d at 812-14; Frost v. Agnos, 152 F.3d at 1128.

In their motions, objections, and briefs, all parties refer to the policies and procedures for suicide watch at Corcoran's Outpatient Housing Unit (OHU) in effect at CCI in 2002-03. In brief, an OHU cell is a single cell that contains a toilet and sink. While in OHU, an inmate is typically provided with a suicide blanket, suicide mattress, and disposable paper boxer shorts. If an inmate is on suicide prevention watch, an inmate is placed in a cell without anything that he could use to harm himself. The inmate is checked on every fifteen minutes. When an inmate is placed under suicide watch, he is placed in a similar cell but is continuously monitored. In extreme cases, staff may further restrict an inmate's access to items and place the inmate in five-point restraints. Inmates normally stay at OHU no more than 72 hours. If a longer time period is needed, inmates are generally transferred to special mental health crisis beds at nearby prison hospitals.

The evidence before the Court, and apparently admitted by all parties, indicates that Plaintiff was placed on suicide prevention status at OHU on: June 6, 2002 to June 20, 2002; August 17, 2002 to August 19, 2002; September 16, 2002 to October 1, 2002; October 15, 2002 to October 16, 2002; November 13, 2002 to November 15, 2002; January 8, 2003 to January 10, 2003; and January 17, 2003 to January 21, 2003. Plaintiff was never placed on suicide prevention status for more than 14 days in a row.

**A.     Alleged Deprivations**

Plaintiff contends that he was deprived of regular showers, sanitation materials and toilet paper, and was forced to remain in cells that were covered in other inmates' excrement. Plaintiff also contends his cell was illuminated twenty-four hours per day. Finally, Plaintiff contends that he was exposed to forty to fifty degree temperatures, provided only limited clothing, and deprived of adequate bedding, which caused him pain, cramps, chills, lower back and neck pain and extreme emotional anguish.

As to Plaintiff's Eighth Amendment claim regarding the temperature of his cell, he provides evidence in his verified complaint and in his declaration filed in opposition to the motion for summary judgment that at night the temperature in his OHU cell was "between 50 and 40 degrees." (Doc. 18. at p. 4.)   Although Plaintiff admits that he had no thermometer in

1  his cell, he alleges that a female nurse informed him that the temperature in the hall outside of
2  his cell was about fifty degrees. (Pltf. Dep., 35:13 - 37:9.)  Plaintiff further offers evidence in
3  the form of his declarations that the temperature in his OHU cell was colder than in the hall
4  outside of his cell.   (Doc. 118 at p. 45).   Plaintiff provides evidence that he regularly
5  complained of the temperature to prison staff but such complaints were not recorded by
6  Defendants. (Doc. 118 at p. 44).   Plaintiff need not be an expert to opine on a cell being too
7  cold to sleep or to give some general approximation of temperature. *See Chatman v. Tyner*,
8  2009 WL 498958, *2, 7-8 (2009) *adopted by*, 2009 WL 901129 (E.D. Cal. 2009)(AWI) (where
9  the court found that an inmate plaintiff's declaration alleging that defendants ignored his
10 temperature related complaint that "he was freezing to death," where he was afforded limited
11 clothing, was sufficient to defeat summary judgment).  Plaintiff does provide evidence that one
12 nurse recorded his complaint of the low temperature as reflected by the nursing care record.
13 (Doc. 118 at p. 48.)   The Court recognizes that, other than the one nurse care record, Plaintiff's
14 account is contradicted by Defendant's records evincing the temperature in the infirmary wing
15 and the failure of prison records to reflect that Plaintiff complained.   (*See* Docs. 107-5, 107-6.)
16 At this stage of the proceedings there is a disputed issue of fact concerning the temperature.
17 Plaintiff has submitted sufficient evidence to create a genuine issue of material fact. *See Fields*
18 *v. Junious*, 2012 WL 2116351, *7 (2012) *adopted by,* 2012 WL 3201689 (E.D. Cal.
19 2012)(AWI).
20         As to Plaintiff's bedding claim, Plaintiff's verified complaint alleges that he was denied
21 a suicide mattress.  Defendants acknowledge that CDCR policy provides for a suicide mattress
22 to be provided to inmates under suicide watch. (Nguyet Decl., ¶ 6.) Suicide mattresses are
23 "designed from a special material that cannot be torn—in order to prevent inmates from
24 attempting to harm themselves, such as by hanging." (Doc. 93-1 at p. 8.) Although a
25 comfortable mattress is not required by the Eighth Amendment, a prisoner cannot be made to
26 sleep on the floor. A practice requiring inmates to sleep on the floor is sufficiently serious
27 deprivation of "the minimal civilized measure of life's necessities" to warrant protection by the
28 Eighth Amendment if continued for a prolonged period. *Wilson v. Seiter*, 501 U.S. 294, 298

(1991) (plaintiff's allegations that defendants deprived him of clothing, bedding, toilet paper, running water and the ability to shower for eight days in cold and unsanitary conditions are sufficient to state a claim); *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1448 (9th Cir 1989); *see Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir.2000) ("modest deprivations can also form the objective basis of a violation, but only if such deprivations are lengthy or ongoing."); *but cf. Anderson v. County of Kern,* 45 F.3d 1310, 1314 (9th Cir.) *amended*, 75 F.3d 448 (9th Cir. 1995) (placement of violent and mentally disturbed inmates in safety cell that was dirty and smelly with a pit toilet for short duration (up to one day) did not violate the Eighth Amendment). Where claims of mattress deprivation have been made and have been directly contradicted by the defendants' records, courts have found that a triable issue of fact existed. *See Bun v. Felker*, 2013 WL 1281895, *14 (E.D. Cal. Mar. 26, 2013) *adopted by* 2013 WL 1907506 (E.D. Cal. 2013). Here, Plaintiff has submitted sufficient competent evidence to create a disputed issue of fact concerning the deprivation of bedding.

   The Court also recognizes that "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone." *Chappell v. Mandeville*, 706 F.3d 1052, 1061 (9th Cir. 2013) (citing *Wilson v. Seiter,* 501 U.S. 294, 304 (1991)). But this only applies when the conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Chappell*, 706 F.3d at 1061. In the instant case, Plaintiff has not only stated a sufficient claims based on cell temperature and the deprivation of a suicide mattress, but also provided evidence that the failure to issue a mattress and the low cell temperature worked in combination to cause a single deprivation of a human need: warmth.

   Plaintiff also provides evidence that the OHU cells he was put in were covered in feces. (Doc. 118)   The fact Defendants' records make no reference to the feces allegedly smeared on the cell in five of the seven occasions is not dispositive on the issue. Rather, it creates a disputed issue of fact. *See Buckley v. Alameida*, 2011 WL 7139570, *23 (2011) *adopted by* 2012 WL 368280 (E.D. Cal. 2012)(LJO) (holding that a genuine issue of material fact exists

were competing testimonial accounts dispute whether the cell was smeared with feces.) The Court recognizes Plaintiff has admitted that on two occasions he did in fact place his own feces in the cell. However, Plaintiff was on suicide prevention watch seven different times during the relevant time period. Accepting that Plaintiff was responsible for the feces on at least two occasions, Plaintiff has still provided evidence of at least five additional times the presence of feces was either not caused by Plaintiff or was not cleaned between Plaintiff's OHU stays. Thus, there is a disputed issue of fact concerning whether Plaintiff was forced to stay in an unsanitary cell containing the feces of other individuals or his own feces from a prior housing in OHU.

The Court disagrees with Defendants' contention that in the objections that Plaintiff has failed to show Defendants knew about Plaintiff's cell's conditions. Defendants argue that because they did not notice the temperature, lack of bedding in Plaintiff's cell, or the presence of feces that they did not cause the constitutional violations to occur. To state a civil rights claim, Plaintiff must provide evidence to show that the defendant proximately caused the deprivation of a federally protected right. *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir.1988); *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir.1981). The critical question is whether it was reasonably foreseeable that the actions or inactions of the particular defendant would lead to the rights violations. *Wong v. United States*, 373 F3d 952, 966 (9th Cir. 2004).

The Court recognizes that Defendants provided evidence in the form of the records they or prison staff prepared, and these records do not reflect that Plaintiff ever complained about the alleged conditions of his cell. However, this does not end the analysis. Plaintiff provides evidence that he complained about his own discomfort and the cell's condition personally to "defendants," who failed to respond. (*See* Doc. 118 at p. 44). Accordingly, there is a disputed issue of fact as to whether defendants caused the alleged deprivations.

This Court must respectfully disagree with the Magistrate Judge's conclusion as to Plaintiff's claims regarding cell temperature, the failure to provide adequate bedding, and the excrement in the cell. Summary judgment is not appropriate as to those issues.

**B. Qualified Immunity - Constant Illumination**

6

In response to Plaintiff's objections, the Ninth Circuit recently recognized that, in the approximate time period of Plaintiff's alleged deprivations, there was no clearly established law which held that constant illumination violated the Eighth amendment – especially when that illumination carried a legitimate purpose. *Chappell*, 706 F.3d at 1058.  Defendants have provided evidence that the constant illumination at issue in this action was implemented in order to facilitate the regular checks required by prison policy for suicide watch.  Given the lack of a clearly recognized constitutional violation and the legitimate purpose of the illumination, Defendants are entitled to qualified immunity on Plaintiff's claims based on illumination.

**ORDER**

Accordingly, THE COURT HEREBY ORDERS that:

1. The findings and recommendations issued by the Magistrate Judge on June 26, 2013, are adopted in part;

    a. Summary judgment is GRANTED in favor of Defendants as to Plaintiff's claims relating to deprivation of showers and hygienic items, deprivation of adequate clothing, constant illumination, and Plaintiff's stay length in the OHU for the reasons articulated by the Magistrate Judge in the findings and recommendations;

2. The findings and recommendations issued by the Magistrate Judge on June 26, 2013, are rejected in part;

    a. Summary judgment is DENIED to Defendants as to Plaintiff's claims relating to the OHU cell's temperature, the deprivation of a suicide mattress, and being placed in cell containing feces.

IT IS SO ORDERED.

Dated:   September 22, 2014

SENIOR DISTRICT JUDGE