1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  CARLOS HENDON, | Case No.  1:05-cv-01247-SAB-PC |
| 12              Plaintiff, | ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |
| 13          v. | (ECF NOs. 177, 179) |
| 14  I. BAROYA, et al., | ORDER DENYING AS MOOT PLAINTIFF'S MOTIONS IN LIMINE |
| 15              Defendants. | |
| 16 | (ECF NOs. 183, 187, 189) |

17

18         Plaintiff Hendon is appearing pro se and in forma pauperis in this civil rights action

19  pursuant to 42 U.S.C. § 1983.   The parties have consented to magistrate judge jurisdiction

20  pursuant to 28 U.S.C. § 636(c).[1]   Pending before the Court are motions for summary judgment

filed by Defendants Baroya, Hoppe, Nguyet and Riedman (ECF No. 177) and Defendant Pham

21  (ECF No. 179).  The motions were filed on September 25, 2014.  Plaintiff's opposition was filed

22  on December 9, 2015.  (ECF No. 210).  Defendants filed their replies on December 16, 2015.

23  (ECF Nos. 212, 213.)[2] Plaintiff filed a surreply on January 4, 2016. (ECF No. 217.)  Pursuant to

24

25  [1] Plaintiff filed a consent to proceed before a magistrate judge on October 17, 2005. (ECF No. 4.)  Defendant Pham
    filed a consent on March 17, 2015.  (ECF No. 155.)  Defendants Baroya, Hoppe, Nguyet and Riedman filed a
26  consent on March 19, 2015. (ECF No. 158.)
    [2] On October 9, 2015, a telephonic hearing was held on Plaintiff's motion for extension of time to file opposition to
27  Defendants' motions for summary judgment.  On the same date, an order was entered, vacating the trial date and the
    October 23, 2015, hearing date on the motion for summary judgment and motions in limine. (ECF No. 203.)   The
    Court set deadlines for the filing of an opposition to the motion for summary judgment and replies, which the parties
28  have complied with.  The Court also set a hearing date of January 8,  2016, for the motions for summary judgment

Local Rule 230(l), all motions in pro se prisoner cases are deemed submitted when the time for filing a reply has expired.  The Court will, however, consider Plaintiff's surreply in resolving the motion for summary judgment.

# I.

## PROCEDURAL HISTORY

This action proceeds on the June 26, 2008, second amended complaint.  Plaintiff alleges that he was repeatedly placed in secure cells for inmates on suicide watch from June 6, 2002, to January 2003.  Plaintiff alleges that during this time he was limited to having the minimum of certain items.  For example, he was given only a thin blanket which he states was sometimes dirty and stained, the heat was inadequate for winter months and that his requests to increase the heat went unfulfilled.  Plaintiff alleges that he was sometimes kept in his cell for days or weeks covered in his own excrement, subjected to constant illumination and  sometimes placed in a cell next to a psychotic inmate who would  scream and beat on the doors resulting in a loss of sleep. Plaintiff alleges that he was sometimes deprived of toilet paper on the basis that he might use it to cover  his cell window, was deprived of showers while confined in the infirmary, and that the cells were not cleaned when one  inmate was removed and another  took his place.  Plaintiff alleges that the Defendants were aware of these conditions which, he  contends, resulted in pains, cramps, chills, lower back and neck pain and extreme emotional  anguish.  Plaintiff claims  that the conditions constituted an Eighth Amendment violation.

Defendants were served with the second amended complaint, and filed an answer.  On November 24, 2009, Defendants filed a motion pursuant to Federal Rule of Civil Procedure 12(b) on the ground that Plaintiff had failed to exhaust his available administrative remedies prior to filing suit. (ECF No 42.)  On July 23, 2010, findings and recommendations were entered, recommending that the motion to dismiss be denied. (ECF No. 45.)[3]  On September 7, 2010, the

---

and motions in limine.  The Court, having reviewed the record, finds the matter suitable for decision without oral argument.  See Local Rule 230(g).

[3] The November 24, 2009, motion to dismiss was denied on the ground that the exhibits submitted by Defendants indicated that B. Snider, the  Litigation Coordinator at CCI's review of the appeals from the appeals tracking system log covered the period of June 6, 2002, through January 22, 2003.  The allegations of the Second Amended Complaint indicated that Plaintiff was housed in the OHU during that time frame.  Appeals must be submitted within fifteen working days of the event being appealed.  Cal. Code Regs., tit. 15 § 3084.2(a).  The Magistrate Judge

District Court adopted  the findings and recommendations, denying Defendants' motion to dismiss. (ECF No. 49.)   On October 1, 2012, Defendants Baroya, Hoppe, Nguyet and Riedman filed a motion for summary judgment. (ECF No 93.)   Defendant Pham filed a motion for summary judgment on November 30, 2012.  (ECF No. 107.)   On June 26, 2013, findings and recommendations were entered, recommending that Defendants' motions for summary judgment be granted.  (ECF No 125.)   Plaintiff objected and  on September 23, 2014,  the District Court adopted in part the findings and recommendations.  The District Court granted Defendants' motion as to Plaintiff's claims relating to the deprivation of showers and hygienic items, deprivation  of adequate clothing, constant illumination, and Plaintiff's stay length in the Observation Housing Unit (OHU).  The District Court denied the motion as to Plaintiff's claims relating to the  OHU's cell temperature, the deprivation of a suicide mattress and being placed  in a cell containing feces. (ECF No. 134.)

The parties  consented to magistrate judge jurisdiction, and a trial date was set.  At the September 21, 2015, pretrial confirmation hearing, Defendants indicated their desire to file motions for summary judgment.  On September 25, 2015, Defendants filed their motions.  As noted, the parties have timely complied with the briefing schedule.

## II.

### SUMMARY JUDGMENT

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or

---

reasoned that because Defendants did not submit evidence that they reviewed appeals filed within fifteen working days after  January 22, 2003, Plaintiff could have filed a grievance in that time frame.   In support of the motion for summary judgment now before the Court, Defendants Baroya, Hoppe, Riedman and Nguyet submit the declaration of B. Snider, establishing that Snider reviewed the appeals from June 5, 2002, until July 15, 2009. (Snider Decl. ¶ 4, Ex. 2.)

absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial."  In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

## A.  Exhaustion

Pursuant to the Prison Litigation Reform Act of 1996, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners  are required to exhaust the available administrative remedies prior to filing suit.  Jones v. Bock,  49 U.S. 199, 211 (2007);

McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).   Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all suits relating to prison life. Porter v. Nussle, 435 U.S. 516, 532 (2002).

The failure to exhaust in compliance with section 1997e(a) is an affirmative defense under which Defendant has the burden of raising and proving the absence of exhaustion.   Jones, 549 U.S. at 216; Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).   The failure to exhaust nonjudicial administrative remedies is subject to a motion for summary judgment in which the Court may look beyond the pleadings. Albino, 747 F.3d at 1170.  If the Court concludes that Plaintiff has failed to exhaust, the proper remedy is dismissal without prejudice.   Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

The California Department of Corrections and Rehabilitation (CDCR) has an administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners' welfare.  Cal. Code Regs. tit. 15, § 3084.1.  Prior to 2011, the process was initiated by submitting a CDC Form 602 describing the problem and the action requested, tit. 15, §3084.2(a), and the appeal had to be submitted within fifteen working days of the event being appealed or of the receipt of the unacceptable lower level decision, tit. 15, §3084.6(c).  Up to four levels of appeal may be involved, including the informal level, first formal level, second formal level, and third formal level, also known as the Director's Level.  Tit. 15, §3084.5.  In order to satisfy section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit.  Woodford v. Ngo, 548 U.S. 81, 85-86 (2006); McKinney, 311 F.3d at 1199-1201.  On January 28, 2011, the inmate appeals process was modified and limited to three levels of review with provisions allowing the first level to be by bypassed under specific circumstances.  Cal. Code Regs. tit. 15, § 3084.7.

"[E]xhaustion is not per se inadequate simply because an individual later sued was not named in the grievance."  Jones v. Bock, 549 U.S. 199, 219 (2007).  "The level of detail necessary in a grievance to comply with grievance procedures will vary from system to system

1    and claim to claim, but it is the prison's requirements, and not the PLRA, that define the

2    boundaries of proper exhaustion."   Id.   In California, the courts have previously found that

3    CDCR guidelines do not need to identify the defendants by name because the proper form and

4    CDCR regulations do not require identification of specific individuals.   See, e.g., Butler v.

5    Adams, 397 F.3d 1181, 1183 (9th Cir. 2005).

6             However, as of January 2011, inmates are required to list all staff members involved and

7    describe their involvement, include only one issue or related set of issue per appeal, and

8    "describe the specific issue under appeal and the relief requested."   Cal. Code Regs. Tit 15,

9    §3084.2(a)(1)-(4) (Jan. 28, 2011).

10            Defendant Pham supports his motion with the declarations of the following individuals: J.

11   Wood, Appeals Coordinator at CCI Tehachapi; M. Voong, Chief, Office of Appeals in

12   Sacramento; B. Snider, Correctional Counselor at CCI Tehachapi; A. Pacillas, Appeals

13   Coordinator at CSP Corcoran; J. Morgan, Appeals Coordinator at Pleasant Valley State Prison;

14   M. Kimbrell, Litigation Coordinator at CSP Corcoran.   Defendant Pham's evidence establishes

15   the following statement of undisputed material facts.[4]

16   .      1.     The procedure for submitting inmate appeals is listed in the California Code of

17                 Regulations (CCR), Title 15, and the Inmate Orientation Manual.  (Wood Decl. ¶

18                 4.)

19          2.     The California Code  of Regulations and Inmate Orientation Manual are available

20                 in the inmate libraries located at each CDCR facility, including CCI Tehachapi.

21                  (Wood Decl. ¶ 4.)

22          3.     To initiate the appeals process, inmates must submit a CDCR 602 form. (Wood

23                 Decl. ¶ 6.)

24          4.     The CDCR 602 forms are located in all inmate housing units, including

25

26   [4] Plaintiff neither filed his own separate statement of undisputed facts nor admitted or denied the facts set forth by
     Defendants as undisputed.  Local Rule 260(b).  Therefore, Defendants' statement of undisputed facts is accepted
27   except where brought into dispute by Plaintiff's verified complaint and verified opposition.  Jones v. Blanas, 393
     F.3d 918, 923 (9th Cir. 2004)(verified complaint may be used as an opposing affidavit if it based on pleader's
     personal knowledge of specific facts which are admissible in evidence); see also Johnson v. Meltzer, 134 F.3d 1393,
28   1399-1400 (9th Cir. 1998).

                                                      6

1    the Administrative Segregation Unit and the Outpatient Housing Unit

2    at CCI.  (Wood Decl. ¶ 6.)

3    5.    Appeals are recorded in the Inmate/Parolee Appeals Tracking System

4    At Level I and II for each CDCR facility.  (Wood Decl. ¶¶ 7, 20. Snider

5    Decl. ¶; Pacillas Decl. ¶ 3; Fordham Decl. ¶3; Morgan Decl. ¶ 3.)

6    6.    Appeals submitted to Level III, or the Director's Level, are recorded in the

7    Inmate Appeals Tracking System – Level III.  (Voong Decl. ¶ 3.)

8    7.    In 2002, only those appeals that were submitted in accordance with applicable

9    California Code of Regulations were accepted for review and received a log

10   number. (Wood Decl. ¶¶ 8-9.)

11   8.    In 2002, those appeals that failed to comply with the regulations were screened

12   and did not receive a log number. (Wood Decl. ¶ 9.)

13   9.    CDCR regulations require copies of inmate appeals, submitted in accordance with

14   California Code of Regulations, and the administrative responses to be maintained

15   in the inmate's custody file.  (Snider Decl. ¶ 4.)

16   10.   Prior to his first placement in OHU at CCI on June 6, 2002, Hendon had

17   submitted seven appeals to the third level in accordance with California Code of

18   Regulations and received final dispositions.  (Voong Decl. ¶¶ 4, 6, Ex. 13.)

19   11.   From June 5, 2002 until July 15, 2009, Hendon properly submitted only seven

20   appeals regarding incidents or events occurring at CCI, in accordance with

21   applicable California Code of Regulations.  (Snider Decl. ¶ 4, Ex. 2; Wood Decl.

22   ¶¶ 9, 10, Ex. 3-9; Kimbrell Decl. ¶¶ 4-9, Ex. 1.)

23   12.   Appeal Log No. CCI-07-02-02899 was first submitted by Hendon on August 14,

24   2002.  (Kimbrell Decl. ¶ 11, Ex. 3.)

25   13.   Appeal Log No. CCI-07-02-02899 generally regards Hendon's assertion that his

26   Rules Violation Report, dated June 8, 2002, charging him with "Masturbation"

27   was adjudicated unfairly. (Wood Decl. ¶12, Ex. 3.)

28   14.   Appeal Log No. CCI-9-00060 was first submitted by Hendon on January 2, 2003.

1    (Kimbrell Decl. ¶ 12, Ex. 4.)

2    15.   Appeal Log No. CCI-9-03-00060 generally regards Hendon's assertion that he

3          was not afforded an investigative employee prior to being found guilty of a Rules

4          Violation Report for Battery on a Peace Officer on September 9, 2002. (Wood

5          Decl. ¶ 13, Ex. 4.)

6    16.   Appeal Log No. CCI-9-03-00061 was first submitted by Hendon on December

7          19, 2002. (Kimbrell Decl. ¶ 13, Ex. 5.)

8    17.   Appeal Log No. CCI-9-03-00061 generally regards Hendon's request to reassess

9          his ten month Security Housing Unit term for being found guilty of a Rules

10         Violation Report for Possession of a Weapon.  (Wood Decl. ¶ 14, Ex. 5.)

11   18.   Appeal Log No. CCI-9-03-00084 was first submitted by Hendon December15,

12         2002.  (Kimbrell Decl. ¶ 14, Ex. 6.)

13   19.   Appeal Log No. CCI-9-03-00084 generally regards Hendon's allegation that he

14         was denied access to the law library.    (Wood Decl. ¶ 15, Ex. 6.)

15   20.   Appeal Log No. CCI-9-03-01315 was first submitted by Hendon on April 13,

16         2003.  (Kimbrell Decl. ¶ 15, Ex. 7.)

17   21.   Appeal Log No. CCI-9-03-01315 generally regards the confiscation of Hendon's

18         magazines that contained nude images.  (Wood Decl. ¶ 16, Ex. 7.)

19   22.   The only appeal that Hendon submitted to the third level of appeals, regarding an

20         incident or events occurring at CCI, was Appeal Log No. CCI-9-03-01315.

21         (Voong Decl. ¶¶7-8, Ex. 13.)

22   23.   Appeal Log No. CCI-9-03-01315 was screened at the third level for Hendon's

23         failure to comply with appeals procedures as required by California Code of

24         Regulations, Title 15.  (Voong Decl. ¶ 8, Ex. 13.)

25   24.   Appeal Log No. CCI-9-03-02730 was first submitted by Hendon On October 16,

26         2003. (Kimbrell Decl. ¶ 16, Ex. 8.)

27   25.   Appeal Log No. CCI-9-03-02730 generally regards Hendon's allegation that the

28         use of force policy for cell extractions is improper.  (Wood Decl. ¶ 17, Ex. 8.)

26.    Appeal Log No. CCI-6-04-02215 was first submitted by Hendon on September 2, 2004.  (Kimbrell Decl. ¶ 17, Ex. 9.)

27.    Appeal Log No. CCI-6-04-02215 generally regards Hendon's allegation that he was transferred to a CDCR institution without his property. (Wood Decl. ¶ 18, Ex. 9.)

28.    Inmates transferred between CDCR facilities are able to continue the appeals process for appeals regarding an incident or event occurring at CCI, at the third level.  (Wood Decl. ¶ 20.)

29.    Hendon did not complete any appeal regarding an incident or event occurring at CCI at the third level.  (Voong Decl. ¶ 7, Ex. 13.)

30.    Dr. Luong Pham treated Hendon on June 10, 2002.  (Ex. C to Dr. Pham's November 30, 2012, motion for summary judgment, (ECF No. 107, ¶. 42.)

31.    Dr. Luong Pham treated Hendon on September 16, 2002.  ( Ex. C to Dr. Pham's November 30, 2012, motion for summary judgment, (ECF No. 107, ¶. 56.)

32.    Dr. Luong Pham treated Plaintiff on October 15, 2002.  (Ex. C to Dr. Pham's November 30, 2012, motion for summary judgment, (ECF No. 107, ¶ 59.)

Defendants Baroya, Hoppe, Nguyet and Riedman support their motion with the declarations of the following individuals: W. Robinson, Custodian of Records at CSP Corcoran; J. Morgan, Appeals Coordinator at Pleasant Valley State Prison; M. Fordham, Appeals Coordinator at CSP Lancaster; J. Wood, Appeals Coordinator at CCI Tehachapi; D. Goree, Appeals Coordinator at CSP Corcoran; B. Snider, Correctional Counselor at CCI; M. Voong, Chief, Office of Appeals, Sacramento.  Defendants' evidence establishes the following undisputed facts.

1.    At all relevant times, Plaintiff Carlos Hendon (J-62763) was a state prisoner in the lawful custody of the CDCR, and housed at CCI Tehachapi.  (Sec. Am. Compl., ECF No. 18 at 3.)

2.    Plaintiff was placed on suicide prevention status in the CCI Outpatient Housing Unit on: June 6, 2002 to June 20, 2002; August 17, 2002 to August 19, 2002;

September 16 2002 to October 1, 2002; October 15, 2002 to October 16, 2002; January 8, 2003 to January 10, 2003; January 17, 2003 to January 21, 2003. (Order on Mot. For Summ. J., ECF No. 134 at 3:12-17.)

3.  During the course of his stays in the CCI OHU between June 6, 2002 and January 21, 2003, Plaintiff was seen by psychologists Dr. Riedman and Hoppe, and psychiatrists Drs. Baroya and Nguyet.  (Sec. Am. Compl., ECF No. 18 at 2-3.)

4.  Plaintiff claims that while on suicide prevention status, he was forced to remain in cells that were covered in feces, exposed to forty to fifty degree temperatures, and deprived of adequate bedding. (Order on Mot. For Summ. J., ECF No. 134 at 3:19-24, 7:21-23.)

5.  Between June 6, 2002 and January 21, 2003, Plaintiff was temporarily housed in other prisons.  (Robinson Decl. Ex. H.)

6.  Plaintiff transferred from CCI to California State Prison, Los Angeles County on October 4, 2002 (Robinson Decl. Ex. H.)

7.  Plaintiff transferred to CCI on October 10, 2002.  (Robinson Decl. Ex. H.)

8.  Plaintiff transferred to CSP Corcoran on October 16, 2002. (Robinson Decl. Ex.  H.)

9.  Plaintiff transferred back to CCI on November 7, 2002. (Robinson Decl. Ex. H.)

10.  Plaintiff transferred to Pleasant Valley State Prison on January 10, 2003. (Robinson Decl. Ex. H.)

11.  Plaintiff transferred back to CCI on January 17, 2003. (Robinson Decl. Ex. H.)

12.  Plaintiff stayed at CCI until his transfer to R.J. Donovan Correctional facility on November 19, 2003. (Robinson Decl. Ex. H.)

13.  Between June 6, 2002 and June 6, 2003, Plaintiff did not submit grievances concerning conditions at CCI while he was housed at CSP Corcoran, Pleasant Valley State Prison or CSP Los Angeles County. (Goree Decl. ¶¶6-7; Morgan Decl. ¶¶6-7; Fordham Decl. ¶¶ 6-7.)

14.  If Plaintiff submitted a grievance regarding conditions at CCI while he was

1    housed at another prison, the grievance would have been forwarded to CCI

2    for further processing.   (Wood Decl. ¶ 12; Goree Decl. ¶ 8; Morgan Decl. ¶ 8.

3    Fordham Decl. ¶ 8.)

4    15.    CCI Appeals Office records show that between June 6, 2002 and June 26, 2008,

5    Plaintiff submitted seven grievances concerning events at CCI that complied with

6    State regulations and were accepted for review.  (Wood Decl. ¶¶ 7, 12; Robinson

7    Decl. Exs. A-G; Snider Decl. Ex. I.)

8    16.    The accepted grievances at CCI during that time period are: (1) CCI-02-02899;

9    (2) CCI-03-00060; (3) CCI-03-00061; (4) CCI-03-00084; (5) CCI-03-01315;

10   (6) CCI-03-02730; and (7) CCI-04-02215. (Wood Decl. ¶¶ 7, 12; Robinson Decl.

11   Exs. A-G; Snider Decl. Ex. 1.)

12   17.    None of these seven grievances concerned the conditions of Plaintiff's

13   confinement while in the CCI OHU.  (Wood Decl. ¶¶ 7, 12; Robinson Decl.

14   Exs. A-G.)

15   18.    Between June 6, 2002 and June 26, 2008, Plaintiff submitted three grievances

16   that were accepted for a third level of review.  (Voong Decl. ¶ 8, Exs. J-L.)

17   19.    Those three grievances concerned events at California State Prison, Sacramento.

18   (Voong Decl. ¶ 8, Exs. J-L.)

19   20.    The Office of Appeals' records reflect Plaintiff submitted one grievance to the

20   third level of review originating from CCI on November 20, 2003, bearing log

21   number CCI-03-01315.  (Voong Decl. ¶ 9; Robinson Decl. Ex. E.)  However,

22   that grievance involved confiscation of magazines depicting nudity and was

23   screened due to non-compliance with grievance procedures.  (Voong Decl. ¶9;

24   Robinson Decl. Ex. E.)

25   21.    Plaintiff did not submit any grievances concerning incidents from CCI that were

26   accepted at the third level of review between June 6, 2002 and June 26, 2008.

27   (Voong Decl. ¶ 11.)

28

# III.

## ANALYSIS

Defendants argue that the evidence establishes that Plaintiff did not administratively exhaust any grievance regarding his conditions of confinement claims against Defendants arising from the conditions of confinement at the relevant times Plaintiff was housed  in the CCI OHU. Defendants'evidence establishes that Plaintiff submitted seven grievances to the CCI Appeals Office between June 6, 2002 and June 26, 2008, that complied with regulations and were accepted for review.  Although some of those grievances were submitted during the time that Plaintiff's claims arose, a review of the grievances indicates that none of them concerned Plaintiff's claims in this lawsuit.

### 1.  CCI-02-02899

This grievance concerned a Rules Violation Report.  Plaintiff submitted CCI-02-02899 on August 19, 2002. (Wood Decl. ¶ 7; Robinson Decl. Ex. A.)  This was the same day Plaintiff's second stay in the CCI OHU ended.  (Order on Mot. for Summ. J., ECF No. 134 at 3:12-17.) This grievance concerned Plaintiff's claim that his Rules Violation Report, Log No. IVB-SH-02/06-0449, dated June 8, 2002, was adjudicated unfairly.  (Id.)  The grievance was cancelled on September 17, 2002, at the second  level of review, because Plaintiff refused to exit his cell and be interviewed.  (Id.)

### 2.  CCI-03-00060

This grievance also concerned a Rules Violation Report.  Plaintiff submitted CCI-03-00060 on January 9, 2003.  (Wood Decl. ¶ 7; Robinson Decl. Ex. B.)  This grievance was submitted during Plaintiff's sixth stay in the CCI OHU.  (Order on Mot. for Summ. J., ECF No. 134 at 3:12-17.)  In it, Plaintiff claimed that his Rules Violation Report, Log No. CCI-09-03-00060, dated September 9, 2002, as adjudicated unfairly.  (Id.)  The Rules Violation Report was adjudicated in between Plaintiff's second and third stay in the CCI OHU.  (Id.)  The grievance was denied at the second level of review on February 18, 2003. (Id.)

### 3.  CCI-03-00061

Plaintiff submitted CCI-03-00061 on January 9, 2003.  (Wood Decl. ¶ 7; Robinson Decl.

Ex C.)  This grievance, like CCI-03-00060, was submitted during Plaintiff's sixth stay in the CCI OHU.   (Order on Mot. for Summ. J., ECF No. 134 at 3:12-17.)   It concerned Plaintiff's claim that he was improperly assessed a Security Housing Unit term for possession of a razor.  (Id.)  The grievance was denied at the second level of review on January 22, 2003.  (Id.)

### 4.  CCI-03-00084

This grievance concerns law library access.  Plaintiff submitted  CCI-03-00084 on January 9, 2003.  (Wood Decl. ¶ 7; Robinson Decl. Ex. D.)  This grievance was also submitted during Plaintiff's sixth stay in the CCI OHU.  (Order on Mot. for Summ. J., ECF No. 134 at 3:12-17.)   Plaintiff claimed that he was improperly denied access to the law library.  (Id.)  The grievance was denied at the first level of review on February 18, 2003.  (Id.)

### 5.  CCI-03-01315

This grievance concerned the confiscation of banned publications.  Plaintiff  submitted CCI-03-01315 on May 14, 2003, several months after his last stay at the CCI OHU.  (Wood Decl. ¶ 7; Robinson Decl. Ex. E.)  Plaintiff claimed that several of his Playboy magazines were improperly confiscated from  his cell. (Id.)  The grievance was granted in part at the first level of review, denied at the second level of review on October 31, 2003, and cancelled at the third level of review on July 22, 2003.  (Wood Decl. ¶ 7, Ex. F; Voong Decl. ¶ 10.)

### 6.  CCI-04-02730

This grievance concerned the use of pepper spray.  Plaintiff submitted CCI-04-02730 on October 24,  2003.  (Wood Decl. ¶ 7; Robinson Decl. Ex. G.)  This grievance concerned an excessive force claim arising from Plaintiff being pepper sprayed  (Id.)  The grievance was denied at  the second level of review on November 17, 2003.  (Id.)

### 7.  CCI-04-02215

This grievance concerned property transfers.  Plaintiff submitted CCI-04-02215 on September 8, 2004.  (Wood Decl. ¶ 7; Robinson Decl. Ex. H.)  This grievance concerned Plaintiff's claim that he was transferred to the R. J. Donovan Correctional Facility, and then to CSP Sacramento, without his property.  (Id.)  The grievance was granted at the first level of review on October 13, 2004. (Id.)

1    The Court finds that Defendants have met their burden on summary judgment.

2    Defendants have come forward with evidence that establishes that none of the grievances

3    submitted by Plaintiff addressed Plaintiff's claims in this lawsuit.  Plaintiff was required to

4    submit a grievance within fifteen working days for each incident giving rise to his claims.

5    Defendants' evidence establishes that Plaintiff was able to pursue grievances during the relevant

6    timeframe, but none of the grievances filed by Plaintiff addressed the claims  in this lawsuit.  As

7    noted, this action proceeds on Plaintiff's claims relating to the OHU's cell temperature, the

8    deprivation of a suicide mattress, and being placed in a cell containing feces.  (ECF No. 134 at

9    7:21-22.)  Defendant's evidence establishes that Plaintiff's claims are unexhausted.  The burden

10   shifts to Plaintiff to come forward with evidence that establishes a triable issue of fact as to

11   whether he exhausted his available administrative remedies prior to filing suit.

12   In opposition to Defendants' motion for summary judgment, Plaintiff submits a two page

13   declaration.  (ECF No. 210.)  Plaintiff declares,  under  penalty of perjury, that he submitted a

14   grievance on October 4, 2002, that he never received a response, and that CCI's failure to

15   respond to his claims rendered them exhausted. (ECF No. 210 at 4, ¶3.)  Plaintiff reasons that

16   during the time period relevant to his case, because grievances that were screened out did not get

17   assigned a tracking number, his grievance submitted on October 4, 2002, could have concerned

18   claims in this lawsuit.

19   "'Unauthenticated documents cannot be considered in a motion for summary judgment,'"

20   and [t]he authentication of a document requires 'evidence sufficient to support a finding that the

21   matter in question is what its proponent claims.'" Las Vegas Sands, LLC v. Nehme, 632 F.3d

22   526, 532-533 (9th Cir. 2011)(quoting Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th

23   Cir. 2002)(citing Fed. R. Evid. 901(a).  An inquiry into authenticity concerns the genuineness of

24   an item of evidence, not its admissibility.  Orr, 285 F.3d at 776.  Rule 901 of the Federal Rules of

25   Evidence provides that evidence may be authenticated by "[t]he appearance, contents, substance,

26   internal patterns, or other distinctive characteristics of the item, taken together with all the

27   circumstances," Fed. R. Evid. 901(b)(4), and documents may be authenticated by review of their

28   contents if they appear to be sufficiently genuine, Las Vegas Sands, LLC, 632 F.3d at 533 (citing

1  Orr, 285 F.3d at 778 n. 24)(quotation marks omitted).

2       Courts generally view objections based on authentication skeptically in the absence of an

3  indication that the document's authenticity is genuinely in dispute.  Chamberlain v. Les Schwab

4  Tire Center of California, Inc., No. 2:11-cv-03105-JAM-DAD, 2012 WL 6020103, at *2 (E.D.

5  Cal. Dec. 3, 2012); Burch v. Regents of the University of California, 433 F. Supp.2d 1110, 1120-

6  1121 (E.D. Cal. 2006), and objections to prison records which are clearly what they purport to be

7  are routinely overruled under Rule 901(b)(4), see, e.g, Thomas v. Quintana, No. CV 10-2671-

8  JGB (CWX) (official Bureau of Prisons logs and records maintained in the ordinary course of

9  business); Howard v. Wang, No. 1:10-cv-01783-AWI-DLB-PC, 2014 WL 3687728, at *3 (E.D.

10  Cal. Jul. 24, 201)(prison records maintained in inmate's central and medical files), findings and

11  recommendations adopted in full, 2014 WL 5483739 (E.D. Cal. Nov. 19, 2014); Abdullah v.

12  CDC, No. CIV S 06-2378 MCE JFM P, 2010 WL 4813572, at *3 (E.D. Cal. Nov, 19,

13  2010)(finding no objection for lack of foundation and authentication unavailing where the

14  records were from the plaintiff's prison file and they were created and maintained by prison

15  officials), findings and recommendations adopted in full, 2011 WL 489599 (E.D. Cal. Feb. 7,

16  2011); Sanchez v. Penner, No. CV S-07-0542 MCE EFB P, 2009 WL 3088331, at *5 (E.D. Cal.

17  Sept. 22, 2009)(overruling lack of foundation and proper authentication objections to prison

18  medical records submitted by the plaintiff).

19       Here, Plaintiff submits a declaration that he submitted a grievance on October 4, 2002,

20  but fails to offer any competent evidence that it complied with procedural requirements  and that

21  it was submitted through the third level of review.  Documents may be authenticated through

22  personal knowledge where they are attached to an affidavit and the affiant is a competent witness

23  who wrote the document, signed it, used it, or saw others do so.  Fed. R. Evid. 901(b)(1); Las

24  Vegas Sands, LLC, 632 F.3d at 553 (citing Orr, 285 F.3d at 773.)   Moreover, Plaintiff's

25  competence to testify about matters within his personal knowledge may be inferred from his

26  declaration.  Strong v. Valdez Fine Foods, 724 F.3d 1042, 1045 (9th Cir. 2013); Barthelemy v.

27  Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990)(per curiam).  However, Plaintiff's

28  opposition does not lay an adequate foundation to authenticate the October 4, 2002, grievance.

1    Even considering the leniency Plaintiff is entitled to given his pro se status, Plaintiff's opposition

2    contains only bare statements that he filed a grievance on October 4, 2002, and that it could have

3    addressed the issues in this lawsuit.  There are no facts as to how he submitted the forms, to

4    whom he submitted the forms.

5           In his reply, Defendant Pham correctly argues that the only issue before the Court is

6    whether Plaintiff's conclusory declaration that he submitted a grievance on October 4, 2002, is

7    sufficient to withstand summary judgment.  Defendant Pham argues that Plaintiff's declaration is

8    plainly contradicted by a previously sworn statement.  Exhibit 1 to Dr. Pham's reply is an

9    amended complaint in a separate lawsuit filed by Plaintiff on July 31, 2006, against Defendant

10   Pham, as well as Defendants Baroya and Riedman.[5]  (1:05-cv-00838-OWW-SMS-P.)   In that

11   action, Plaintiff generally alleged that defendants violated his constitutional and state rights by

12   wrongfully removing Plaintiff from the Outpatient Housing Unit while suicidal.  (Exh. 1, p. 2.)

13   Defendant Pham's Exhibit 2 to his reply is a copy of Plaintiff's objections to the findings and

14   recommendations to dismiss the action.  In his objections, Plaintiff declared that on October 4,

15   2002, he filed a grievance regarding his wrongful removal from suicide watch. That claim is

16   distinct from the claims at issue in this lawsuit.  Defendant Pham's Exhibit 2 clearly establishes

17   that Plaintiff alleged then to have filed that grievance on October 4, 2002, but one challenging

18   the fact of his removal from suicide watch.  Plaintiff made no reference to the conditions of his

19   confinement. The claims at issue in this lawsuit directly related to the conditions of his

20   confinement while in the OHU.  (Ex.  2, at 5:2-6.)   Defendant Pham correctly argues that this

21   previous sworn statement contradicts the declaration before the Court in this motion for

22   summary judgment.  For purposes of summary judgment, a court may disregard self-serving and

23   conclusory statements that contradict prior declarations.  Angel v. Seattle-First Nat'l Bank, 653

24   F.2d 1293, 1299 (9th Cir. 1981); S.E.C. v. Phan, 500 F.3d 895, 909 (9th Cir. 2007).

25   ///

---

26   [5] The Court may take judicial notice of court records in another case.  Fed. R. Evid. 201; See United States v.
27   Wilson, 631 F.2d 118, 119 (9th Cir. 1980)(stating that a court may take judicial notice of court records in another case).

28

## IV.

### CONCLUSION AND ORDER

Defendants have come forward with evidence that establishes, beyond dispute, that Plaintiff failed to exhaust the available administrative remedies regarding the claims at issue in this lawsuit.  Plaintiff has not come forward with any evidence that establishes a triable issue of fact as to whether he exhausted his available administrative remedies.  Plaintiff's only evidence consists of a single declaration that is contradicted by his earlier declaration.  Defendants' motions for summary judgment should therefore be granted.

Accordingly, IT IS HEREBY ORDERED that:

1.  The motions for summary judgment by Defendants Baroya, Hoppe, Nguyet and Riedman and by Defendant Pham are granted in favor of Defendants and against Plaintiff.

2.  This action is dismissed, without prejudice, for Plaintiff's failure to exhaust his available administrative remedies prior to filing suit.

3.  The motions in limine filed on September 28 and September 30, 2015, are denied as moot.

4.  The Clerk is directed to close this case.

IT IS SO ORDERED.

Dated:  __**January 6, 2016**__

UNITED STATES MAGISTRATE JUDGE

17